<u>FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ROBERT BURRELL,<br><br>                              Plaintiff,<br><br><br>v.<br><br><br>DFS SERVICES, LLC, ET AL.,<br><br>                              Defendants. | Civ. No.  10-2706 (DRD)<br><br><br><br>**O P I N I O N** |

*Appearances by:*

LAW OFFICE OF SCHMUEL KLEIN, PC
by:  Schmuel Klein, Esq.
113 Cedarhill Avenue
Mahwah, NJ 07430

  *Attorneys for Plaintiff*

BALLARD SPAHR, LLP
by:  Martin C. Bryce, Esq. and Mariah Murphy, Esq.
Main Street Plaza 1000, Suite 500
Voorhees, NJ 08043

  *Attorneys for Defendant*

<u>**DEBEVOISE, Senior District Judge**</u>

  Plaintiff Robert Burrell is a victim of identity theft.  The individual who committed that

theft used Mr. Burrell's Discover credit card account, which was administered by Defendant

DFS Services, LLC ("Discover"), to purchase almost $10,000 in goods and services.  The thief

also used Mr. Burrell's identity to incur charges of approximately $1,000 from Defendant Helio,

LLC ("Helio"), a wireless telephone company.  Mr. Burrell alleges that he repeatedly informed Discover and Helio that his identity had been stolen, but the companies did nothing.[1]  Instead, they transmitted information to various credit reporting agencies stating that Mr. Burrell was delinquent in paying his bills.  By doing so, Mr. Burrell argues that the companies violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2.  Additionally, Mr. Burrell contends that Discover and Helio violated Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666, by not responding to his inquiries and failing to make appropriate corrections to his accounts after he informed them that his identity had been stolen.  Finally, Mr. Burrell asserts state law claims for intentional infliction of emotional distress, defamation, and the tort of negligence.

Defendants now move to dismiss Mr. Burrell's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  In doing so, they do not dispute that Mr. Burrell's identity was stolen and the charges at issue were incurred by the thief.  Instead, Defendants rely on technicalities buried in the almost incomprehensibly complex provisions of the FCRA and FCBA, and argue that Mr. Burrell's state law claims are either preempted by the FCRA or are not pled with sufficient particularity.

Though the Court is loath to reward their effort to hide behind the esoteric strictures of the FCRA to defeat claims by a layperson like Mr. Burrell – who could not possibly have been expected to comply with the procedural requirements of that statute and who attempted to address the theft of his identity in a manner that most similarly-situated consumers would consider reasonable – Defendants' arguments relating to Mr. Burrell's FCRA claims are legally, if not morally, correct.  Similarly, Defendants are correct in their assertion that Mr. Burrell's

---

[1] The factual contentions contained in this ruling are drawn from Mr. Burrell's Complaint.  In keeping with the Court's duty to assume the veracity the allegations contained in the Complaint when deciding the pending Motion to Dismiss, <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997), any contradictory factual assertions on the part of Defendants have not been credited.

state law claims are preempted by the FCRA.  Therefore, for the reasons set forth more fully

below, Defendants' Motion to Dismiss will be granted as to Mr. Burrell's FCRA and state law

claims.  Defendants' Motion will be denied, however, with respect to Mr. Burrell's claims under

the FCBA.

## I.  BACKGROUND

Mr. Burrell first discovered that his identity had been stolen in April 2008.  When he did

not receive that month's bill for his Discover credit card, Mr. Burrell contacted the company and

was told by a customer service representative that his statements were being sent to his new

address.  He informed the customer service representative that he had not moved, and was told

that the company would correct the error and forward his bills to his home address.

But Mr. Burrell never received his April 2008 bill.  In fact, he heard nothing from

Discover until September 1, 2008, when he received a statement showing several fraudulent

charges, along with accumulated late fees and penalties for non-payment.  At that point, Mr.

Burrell contacted Discover again, and was told by a customer service representative that the

individual to which the company had been sending his bills had stopped making payments.  The

customer service representative identified that person as "Sarah Foster" – presumably an alias

used by the identity thief.  Mr. Burrell reiterated that his identity had been stolen and that he was

not affiliated with anyone named Sarah Foster, and the customer service representative stated

that the Discover would "look into" the disputed charges.

Approximately one month later, in October 2008, Mr. Burrell again informed

representatives of Discover that his identity had been stolen and received a similar assurance that

the company would investigate.  Finally, on or about May 18, 2009, he submitted a written

Affidavit of Fraud provided by Discover in which he detailed the various fraudulent charges posted to his account.

Yet Discover apparently did nothing.  To the contrary, it allowed the identity thief to continue making charges using Mr. Burrell's card, all while assessing late fees and penalties for non-payment.  That bears repeating:  despite having been informed on four separate occasions – three times orally and once in writing – that an identity thief was making charges using Mr. Burrell's card, Discover failed to stop the fraudulent purchases, and then charged Mr. Burrell extra fees for refusing to pick up the thief's tab.

On June 16, 2009, almost a month after he submitted the Affidavit of Fraud, Mr. Burrell received a bill from Discover for $9,706.68.  The following month, he received a letter stating that his account would soon exceed its credit limit of $10,300.  Apparently at a loss for how to proceed, Mr. Burrell once again contacted a Discover customer service representative, who told him to file a police report.  When he went to his local police station, however, he was referred to the post office, which then advised him that it was unable to process his complaint.

Mr. Burrell's dealings with Helio paint a similar picture – a frustrated consumer pitted against a faceless and unresponsive company.  Unlike Discover, however, Mr. Burrell did not maintain an account with Helio prior to the theft of his identity.  It appears that the identity thief opened such an account and charged wireless services using Mr. Burrell's name and address. Mr. Burrell first learned of that development on May 7, 2009, when he received a bill from Helio for $1,010.16.  When Mr. Burrell telephoned Helio's customer service representatives to dispute the charge, they instructed him to submit a written complaint.  Mr. Burrell did so, and it appeared for the time being that the matter was resolved.  But on September 9, 2009, he received a letter from Helio's legal counsel demanding payment for the debt.

After searching for options to combat the theft of his identity for roughly two years, on March 17, 2010 Mr. Burrell stumbled on the one that Defendants contend he should have pursued from the start.  On that date, he filed a complaint with the three main companies that track consumer credit ratings in the United States – Experian Information Solutions, Inc. ("Experian"), Equifax, Inc. ("Equifax"), and TransUnion, LLC ("TransUnion")[2] – disputing the debts incurred by the identity thief.

Unfortunately, it appears that Mr. Burrell's complaint to the credit rating agencies came too late to do him much good.  By March 2010, Defendants had submitted information to the credit rating agencies stating that he had not paid his debts for almost two years.  His consumer credit rating was ruined, and he was beset by debt collectors, some of whom allegedly continue to harass Mr. Burrell and his family by repeatedly calling his house at inconvenient hours.  The stress of dealing with the debts incurred in his name by the identity thief has rendered him irritable and unable to sleep.  In short, Mr. Burrell has lost more than the monetary amount of the charges incurred by the thief – gone also is his peace of mind.

## II. DISCUSSION

In an attempt to redress the harm done by the theft of his identity, Mr. Burrell filed this action on May 17, 2010.  His Complaint asserts two federal claims and three state law causes of action against Discover and Helio.[3]  In the first of his federal claims, Mr. Burrell contends that Defendants violated the FCRA by (1) telling the credit rating agencies that he was delinquent in paying his bills when they knew or should have known that the charges at issue were fraudulent,

---

[2] The FCRA uses the phrase "consumer reporting agencies" to refer to entities that track consumer credit ratings.  See 15 U.S.C. § 1681a(f).  The Court believes that the function of such entities is more accurately described by the common term, "credit rating agencies."  Therefore, it has used that term throughout this ruling to refer to companies such as Equifax, Experian, and TransUnion.

[3] Mr. Burrell originally asserted claims against several other Defendants, all of whom have settled.

and (2) failing to investigate and correct the erroneous charges after he informed them that his identity had been stolen.  Mr. Burrell's second federal claim alleges that the latter of those actions was also a violation of the FCBA.  In his state claims, Mr. Burrell argues (1) that Defendants' actions constituted intentional infliction of emotional distress, (2) that Discover and Helio defamed his reputation by transmitting information they knew or should have known was false to the credit rating agencies, and (3) that both companies are liable in tort for their negligent behavior with respect to his accounts.

Defendants now move to dismiss Mr. Burrell's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  As discussed above, Defendants do not dispute Mr. Burrell's factual allegations; they do not assert, for instance, that Mr. Burrell failed to inform them in a timely fashion that his identity had been stolen or contend that they properly addressed the fraudulent charges to his account.  Rather, Defendants premise their request for dismissal of Mr. Burrell's FCRA and FCBA claims on technical requirements within those statutes that they argue bar recovery.  Similarly, Defendants contend that Mr. Burrell's state law claims fail not because they lack a foundation in the factual circumstances of this case, but because they are either preempted by the FCRA or are not pled with sufficient particularity.

Defendants' arguments with respect to the FCRA claim take two parts.  First, they contend that Mr. Burrell may not maintain a cause of action under 15 U.S.C. § 1681s-2(a) for their alleged failure to furnish accurate information to the credit rating agencies because that subsection of the FCRA does not include a private right of action.  Defendants admit that there is a private right of action to enforce § 1681s-2(b) – another subsection of the FCRA that requires companies, such as themselves, that furnish information to credit rating agencies to conduct an investigation of any disputed charges and correct those that are erroneous.  They contend,

however, that Mr. Burrell's complaints about the charges to his accounts were not legally sufficient to trigger that obligation.  Rather, Defendants assert that notice of a dispute must come directly from a credit reporting agency in order to invoke the protections of § 1681s-2(b).  In other words, they argue that, instead of calling them directly to dispute the charges made to his accounts by the identity thief, Mr. Burrell should have known that he was required to contact the credit rating agencies – obscure third-party organizations that were not involved in the administration of his accounts and with whom he, like most consumers, had most likely never been involved in any personal capacity.

Defendants argue that Mr. Burrell's state law claims should also be dismissed because they are preempted by the FCRA.  In doing so, they note two sections of that statute, 15 U.S.C. §§ 1681h(e) and 1681t(b)(1)(F), that contain language preempting virtually all state law causes of action.

Finally, Discover contends that the FCBA claim asserted against it must be dismissed because Mr. Burrell did not comply with the technical requirements of that statute.[4]  Specifically, Discover notes that 15 U.S.C. § 1666(a)(1)-(3) requires credit card users to provide written notice to their credit card provider of any charges they believe to be erroneous within 60 days after the issuance of the statement including those charges in order to trigger the requirement, embodied in § 1666(a)(B), that the credit card provider investigate such charges and correct any errors.  Discover asserts that, despite orally informing its customer service representatives of the

---

[4] The portion of the pending Motion seeking dismissal of Mr. Burrell's FCBA claims does not apply to Helio.  That Motion was originally submitted by Discover acting in its individual capacity.  Helio later joined in the Motion by submitting a letter to the Court stating that it adopted Discover's arguments.  Discover argued in its brief, however, that Mr. Burrell provided sufficient written notice to Helio to sustain his claims under the FCBA.  Therefore, Helio could not have joined Discover's argument that the FCBA claims asserted against it must be dismissed due to Mr. Burrell's failure to provide written notice of the fraudulent charges to his account.

illicit charges to his account made by the identity thief, Mr. Burrell never provided written notice of that fraud.

## A.  Standard of Review

In assessing Defendants' arguments, the Court must apply the standard of review applicable to requests for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  That Rule permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted.  When considering a Rule 12(b)(6) motion, the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court's inquiry, however, "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims."  In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

The Supreme Court recently clarified the Rule 12(b)(6) standard in two cases:  Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  The decisions in those cases abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief."  In contrast, Bell Atlantic, 550 U.S. at 545, held that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Thus, the assertions in the complaint must be enough to "state a claim to relief that is plausible on its face," id. at 570, meaning that the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the conduct alleged."  Iqbal, 129 S. Ct. at 1949; see also, Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (In order to survive a motion to

dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

When assessing the sufficiency of a complaint, the Court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949.  Although for the purposes of a motion to dismiss the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950.  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

When a claim is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), leave to amend and reassert that claim is ordinarily granted.  In re Burlington Coat Factory Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).  A claim may be dismissed with prejudice, however, if amending the complaint would be futile.  Id.  "Futile," as used in this context, means that the complaint could not be amended to state a legally-cognizable claim.  Id. (citing Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996)).

## B.  The FCRA

Mr. Burrell's first federal claim is premised on the FCRA.  Congress purportedly enacted that statute to protect consumers.  Its stated purpose is to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the

consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b).  Yet cases like this one lead the Court to wonder how Congress could have possibly believed that the FCRA would carry out those functions.  It is of little value to ordinary consumers, in part due to the fact that it is hopelessly complex – the statute is drafted in hyper-technical language and includes a sufficient number of internal cross-references to make even the most dedicated legal practitioner consider a change in career.  But the FCRA's substance is even more troubling than its complex form.  The statute includes numerous provisions that limit consumers' ability to enforce its mandates either by explicitly barring private actions or by imposing such burdensome procedural requirements that no layperson could possibly be expected to comply.

Several provisions of the FCRA, some of which will be discussed in further detail below, are illustrative of that point.  For instance, 15 U.S.C. § 1681s-2(a)(1)(A) prohibits companies, such as Defendants, that allow consumers to purchase goods or services on credit from passing information about consumer behavior to credit reporting agencies if they know or have reason to believe that information is inaccurate.  Yet the following paragraph, § 1681s-2(a)(1)(B), allows such companies, by simply posting an address to which complaints can be submitted, to escape that requirement and place the burden of ensuring the accuracy of their information on the consumers themselves.  See 15 U.S.C. § 1681s-2(a)(1)(C) (stating that the requirements contained in § 1681s-2(a)(1)(A) do not apply if the entity furnishing credit information has "clearly and conspicuously specified … an address" to which consumers can complain).  Even if a consumer is savvy enough to notice the address posted by his or her creditors and submit a complaint directly to that address, the FCRA leaves consumers no way to ensure that the creditors will stop reporting inaccurate information to the credit rating agencies.  To the contrary,

it explicitly prohibits private individuals from bringing suit to enjoin their creditors from submitting such reports, even if the consumer has already complained directly to those creditors. 15 U.S.C. § 1681s-2(d) (barring private causes of action to enforce § 1681s-2(a)).  Instead, the FCRA requires that obligation to be enforced exclusively by government entities – which have neither the time nor the manpower to track the accuracy of the billions of pieces of information that creditors submit to credit rating agencies each year.  Id. (stating that § 1681s-2(a) "shall be enforced exclusively … by the Federal agencies and officials and State agencies and officials" identified in another portion of the FCRA).  The only portion of the FCRA that an individual consumer can enforce against his or her creditors is found in § 1681s-2(b).  But that provision requires consumers to meet an obscure procedural requirement – namely, filing a complaint with a credit rating agency (which is then required to pass the complaint on to the creditor) – before bringing such an action.  15 U.S.C. § 1681s-2(b)(1); Young v. Equifax Credit Info. Servs., Inc., 294 F.3d 631, 639 (5th Cir. 2002) (Notice to a credit rating agency "is necessary to trigger the furnisher's duties under Section 1681s-2(b).").  In a particularly frustrating twist, another provision of the FCRA requires several federal entities to promulgate regulations governing when and how a consumer may submit a dispute directly to a creditor,[5] 15 U.S.C. § 1681s-2(a)(8)(A), but that provision falls under the section of the FCRA that prohibits private enforcement.  See 15 U.S.C. § 1681(d).  As if that were not enough, the FCRA actually takes away any alternative means that consumers could previously have used to enforce their rights by expressly preempting virtually all state law causes of action related to credit reporting.  15 U.S.C. § 1681t(b)(1)(F); 15 U.S.C. §§ 1681h(e).

In sum, the FCRA generally requires creditors to make sure the information they send to credit rating agencies about a consumer's behavior is correct, but allows the creditors to delegate

_____

[5] Those regulations are contained in 16 C.F.R. §§ 660.1 through 660.4.

that duty to consumers by posting an address to which they can complain.  It then allows the creditors to ignore consumer complaints by prohibiting them from bringing suit.  In order to effectively keep a creditor from distributing inaccurate information, consumers must submit disputes not to the credit card companies and other creditors with which they regularly interact, but to credit reporting agencies – obscure third parties with which they are unlikely to be familiar.  Those requirements have the practical effect of insulating creditors, such as Defendants, from liability even in cases where they fail to take basic measures to protect their customers.  Instead, the FCRA places the burden of ensuring the efficient functioning of the credit reporting system on the consumers themselves – laypeople who are, in most cases, in no position to carry out that task by jumping over the technical hurdles created by the statute.  Such a scheme is troubling, to say the least.

But no matter how troubling they may be, it is not within the province of this Court to override the policy decisions made by Congress.  Dodd v. United States, 545 U.S. 353, 359 (2005) ("Although we recognize the potential for harsh results in some cases, we are not free to rewrite the statute that Congress has enacted.").  "[W]hen [a] statute's language is plain, the sole function of the courts … is to enforce it according to its terms."  Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000) (internal quotations omitted).  Therefore, the Court must assess Mr. Burrell's FCRA claims in keeping with the plain meaning of that statute, regardless of whether it would prefer a different result.

In general terms, the FCRA imposes duties on two types of entities:  credit rating agencies and "furnishers of information."  Although undefined by the statute, the latter category is understood to include any entity that reports information relevant to a consumer's credit rating – i.e., payment history, amount of debt, and credit limit – to credit reporting agencies.  See H.R.

Rep. No. 108-396, at 24 (2003) (Conf. Rep.) ("The most common … furnishers of information are credit card issuers, auto dealers, department and grocery stores, lenders, utilities, insurers, collection agencies, and government agencies.").  Neither side disputes that Discover and Helio are "furnishers of information."

### i.    15 U.S.C. § 1681s-2

The duties imposed on "furnishers of information" by the FCRA are contained in subsections (a) and (b) of 15 U.S.C. § 1681s-2.  Mr. Burrell's Complaint does not specify which of those subsections Discover and Helio allegedly violated.  See (Compl. ¶ 52) (stating only that Defendants "violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2.")  Therefore, the Court will assume that he intended to assert claims under both subsections and will address them in turn.

Subsection (a) of 15 U.S.C. § 1681s-2 imposes certain duties on furnishers of information to ensure the accuracy of that information.  Among those duties is a general prohibition on relaying to a consumer or credit reporting agency any information if they "know[] or have reasonable cause to believe that the information is inaccurate."  15 U.S.C. § 1681s-2(a)(1)(A).  That general prohibition does not apply, however, if the furnisher has "clearly and conspicuously" specified an address to which consumers may send complaints regarding inaccurate charges.  15 U.S.C. § 1681s-2(a)(1)(C).  Rather, the FCRA allows credit card companies and other furnishers of credit information to place the burden of ensuring the accuracy of that information on consumers.  It accomplishes that task by stating that, if the furnisher has "clearly and conspicuously" specified an address to which notice of disputed charges can be sent, the furnisher is prohibited from providing information that may be inaccurate to a credit reporting agency only if it "has been notified by the consumer … that the

specific information is inaccurate" and "the information is, in fact, inaccurate."  15 U.S.C. §

1681s-2(a)(1)(B).  In other words, § 1681s-2(a) allows a furnisher to provide information that it

has reasonable cause to believe is inaccurate to credit rating agencies as long as (1) the furnisher

has clearly specified an address to which consumers can send dispute, and (2) has not yet

received a complaint about the information in question.

      Subsection (b) of 15 U.S.C. § 1681s-2 is somewhat different.  Rather than dealing with

the information provided to credit rating agencies in the first instance by furnishers, subsection

(b) relates to the furnisher's obligations after learning of inaccuracies from the credit rating

agencies.  Thus, whereas § 1681s-2(a) purports to require furnishers of information to ensure the

accuracy of that information before transmitting it to a credit reporting agency, § 1681s-2(b)

requires that furnishers take certain steps to investigate and correct inaccurate information they

have already relayed to the credit rating agencies.  Specifically, § 1681s-2(b)(1) states that:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with
> regard to the completeness or accuracy of any information provided by a person
> to a consumer reporting agency, the person shall–
>
> > (A) conduct an investigation with respect to the disputed information;
> >
> > (B) review all relevant information provided by the consumer reporting
> > agency pursuant to section 1681i(a)(2) of this title;
> >
> > (C) report the results of the investigation to the consumer reporting
> > agency;
> >
> > (D) if the investigation finds that the information is incomplete or
> > inaccurate, report those results to all other consumer reporting agencies to
> > which the person furnished the information and that compile and maintain
> > files on consumers on a nationwide basis; and
> >
> > (E) if an item of information disputed by a consumer is found to be
> > inaccurate or incomplete or cannot be verified after any reinvestigation
> > under paragraph (1), for purposes of reporting to a consumer reporting
> > agency only, as appropriate, based on the results of the reinvestigation
> > promptly–

14

> (i) modify that item of information;
>
> (ii) delete that item of information; or
>
> (iii) permanently block the reporting of that item of information.

A furnisher must generally carry out those duties within 30 days after receiving notice of a dispute.  15 U.S.C. § 1681s-2(b)(2) (cross-referencing the deadlines contained in 15 U.S.C. § 1681i(a)(1)).

### ii.      *Mr. Burrell's Claims*

Mr. Burrell's claims under subsection (a) of 15 U.S.C. § 1681s-2 fail because that portion of the FCRA does not provide a private right of action.  In fact, two other subsections of 15 U.S.C. § 1681s-2 combine to form an explicit bar to such actions.  One of those subsections, § 1681s-2(d), bears the title "limitation on enforcement," and provides that:

> The provisions of law described in paragraphs (1) through (3) of subsection (c) of this section (other than with respect to the exception described in paragraph (2) of subsection (c) of this section) shall be enforced exclusively as provided under section 1681s of this title by the Federal agencies and officials and the State officials identified in section 1681s of this title.

Accordingly, subsection (d) of § 1681s-2 prohibits private enforcement of any of the portions of the FCRA described in paragraphs one and three of subsection (c).  Paragraph one of subsection (c) refers to "subsection (a) of this section, including any regulations issued thereunder."  15 U.S.C. § 1681s-2(c)(1). Therefore, the bar on private enforcement actions applies to the duties imposed on furnishers of credit information by 15 U.S.C. § 1681s-2(a), and Mr. Burrell's claims under that subsection of the FCRA must be dismissed with prejudice.  See, e.g., Chiang v. Verizon New England, Inc., 595 F.3d 26, 35 (1st Cir. 2010) ("Congress has explicitly limited furnishers' liability under § 1681s-2(a) by prohibiting private suits for violations of that portion of the statute."); Gorman v. Wolpoff & Abramson, 584 F.3d 1147, 1162 (9th Cir. 2009) (Plaintiff

"has no private right of action under § 1681s-2(a)(3) to proceed against [a furnisher of information] for its failure to notify the [credit reporting agencies] that he disputed the" charges at issue.); Young, 294 F.3d at 639 (Section 1681s-2(a) of the FCRA does not provide a private right of action because "Section 1681s-2(d) provides that enforcement of Section 1681s-2(a) will be by government officials.").

Mr. Burrell's claims under subsection (b) of 15 U.S.C. § 1681s-2 are similarly deficient. As discussed above, a furnisher of credit information is required to investigate and correct inaccurate charges only "[a]fter receiving notice pursuant to [15 U.S.C. §] 1681i(a)(2) … of a dispute" regarding those charges.  15 U.S.C. § 1681s-2(b)(1).  Section 1681i(a)(2) requires credit rating agencies – not the consumers themselves – to provide such notice to furnishers within five business days from the time the consumer notifies the credit rating agency of a dispute.  Thus, a consumer cannot maintain a claim under subsection (b) of 15 U.S.C. § 1681s-2 based on disputes filed directly with his or her credit card company.  Rather, the consumer must communicate such disputes to a credit rating agency, which is then obligated to pass them on to the credit card company.  See Young, 294 F.3d at 639 (Notice to a credit rating agency "is necessary to trigger the furnisher's duties under Section 1681s-2(b).  Thus, any private right of action [a consumer] may have under § 1681s-2(b) would require proof that a consumer reporting agency … had notified the [furnishing entity] pursuant to § 1681i(a)(2).") (emphasis in original, internal citations omitted).

Mr. Burrell admits that he did not dispute the charges to his Discover card or the Helio account opened by the identity thief to a credit reporting agency until March 17, 2010.[6]  The

---

[6] Mr. Burrell alleges that he notified the credit reporting agencies that his identity had been stolen in writing.  This appears to be one area of the FCRA where a telephone call would have been sufficient.  Under 15 U.S.C. § 1681c-1(a), titled "one-call fraud alerts," a credit reporting agency must respond to a "direct request of a consumer … who asserts a good faith suspicion

charges made by the identity thief occurred from April 2008 to June 2009.  Since they did not

receive notice from Mr. Burrell until almost a year after the final charges were made, the credit

reporting agencies could not have notified Defendants of the fraudulent character of those

charges.  And since such notice from a credit reporting agency – rather than a direct

communication from a consumer – is required to trigger the Defendants' obligations under 15

U.S.C. § 1681s-2(b), Mr. Burrell may not assert a claim based on that subsection of the FCRA

for Defendants' actions in furnishing inaccurate information prior to March 17, 2010, the date on

which he first informed the credit reporting agencies that his identity was stolen.

Assuming that the credit reporting agencies fulfilled their duty under 15 U.S.C. §

1681i(a)(2) and informed Defendants of the dispute after receiving Mr. Burrell's March 17, 2010

communication, however, Mr. Burrell may assert a claim under § 1681s-2(b) based on the

Defendants' failure to investigate that dispute and continued provision of inaccurate information

after receiving notice from the credit reporting agencies.  His current Complaint lacks the detail

necessary for the Defendants or the Court to ascertain whether he intended to do so.  Therefore,

his claims under § 1681s-2(b) of the FCRA will be dismissed.  Erickson v. Pardus, 127 S.Ct.

2197, 2200 (2007) (In order to state a cognizable claim, a Complaint must "give the defendant

fair notice of what the claim is and the grounds upon which it rests.") (internal citations omitted).

Mr. Burrell may submit an Amended Complaint within 30 days of this ruling curing the

deficiencies in that claim.  See Burlington Coat Factory, 114 F.3d at 1434-5 (Leave to amend

should be "freely granted" except in cases of "undue delay, bad faith, dilatory motive, prejudice,

and futility.").  To do so, he must limit his claim to events that occurred after March 17, 2010

---

that the consumer has been or is about to be a victim of fraud or related crime" by including a
"fraud alert" in the consumer's credit file for a period of 90 days and referring the information to
all other credit reporting agencies.  Under 15 U.S.C. § 1681i(a)(2), such "direct" notice would
trigger the credit reporting agencies' duty to inform the consumer's creditors of the alleged
fraud.

and make plausible, good faith factual allegations that the Defendants failed to properly respond after receiving notice pursuant to 15 U.S.C. § 1681i(a)(2) of the fraudulent charges to his account.

## C. State Law Claims

Mr. Burrell's state law claims are preempted by the FCRA. As mentioned above, that statute includes two broad provisions that preempt almost all state causes of action. The first, which is codified at 15 U.S.C. § 1681h(e), states in relevant part that:

> [N]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy or negligence with respect to the reporting of information against … any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

The FCRA's second preemption provision relates specifically to "furnishers of information" such as the Defendants, stating:

> No requirement or prohibition may be imposed under the laws of any State with respect to any subject matter regulated under Section 1681s-2 of this title, relating to the responsibilities of any persons who furnish information to consumer reporting agencies.

15 U.S.C. § 1681t(b)(1)(F).

The interplay between the FCRA's two preemption provisions is typical of the complexity of that statute. On the one hand, § 1681t(b)(1)(F) appears to preempt all state law causes of action, while on the other § 1681h(e) seems at first blush to specifically exempt from preemption defamation, invasion of privacy, and negligence actions in which the furnisher of information acted with malice or willful intent. The Court of Appeals for the Third Circuit has not weighed in on the proper interpretation of those provisions, but the recent decision issued by

the Court of Appeals for the Fourth Circuit in <u>Ross v. F.D.I.C.</u>, --- F.3d ----, 2010 WL 4261819

(4th Cir. 2010), provides a convenient starting point for this Court's analysis.

     As acknowledged by the Fourth Circuit in <u>Ross</u>, the key to the FCRA's preemption

provisions lies in properly understanding the context of those provisions.  "Section 1681h

regulates the disclosures that credit reporting agencies must provide to consumers under §

1681g."[7]  <u>Ross</u>, --- F.3d ----, 2010 WL 4261819 at *4.  Subsections (a) through (d) of § 1681h

"contain the procedures that [credit reporting agencies] must follow when providing these

disclosures."  <u>Id.</u>  Section § 1681h(e) then follows, preempting claims for defamation, invasion

of privacy, and negligence – unless the plaintiff can demonstrate "malice or willful intent to

injure" – based on the two categories of information:  (1) disclosures made "pursuant to section

1681g, 1681h, or 1681m of" the FCRA, and (2) disclosures made "by a user of a consumer

report" who has "taken adverse action" against a consumer "based in whole or in part on th[at]

report."  15 U.S.C. § 1681h(e).

     The information relating to Mr. Burrell's accounts furnished by Defendants does not fall

into either category.  Two of the sections of the FCRA referenced in the first category – §§

1681g and 1681h – apply only to "consumer reporting agencies," which are defined in relevant

part as any entity that "for monetary fees, dues, or on a cooperative nonprofit basis, regularly

engages in whole or in part in the practice of assembling or evaluating consumer credit

information or other information on consumers for the purpose of furnishing consumer reports to

third parties."  15 U.S.C. § 1681a(f).  Defendants do not fit that definition.  They do not assemble

or evaluate consumer credit information for the benefit of third parties.  Instead, they provide

---

[7] In broad terms, § 1681g "requires [credit reporting agencies] to disclose to consumers the
information in their credit file on request."  <u>Ross</u>, --- F.3d ----, 2010 WL 4261819 at *4.

information on their own consumers to credit rating agencies, such as Equifax, Experian, and TransUnion, who carry out that function.

Section 1681m contains "[r]equirements on users of consumer reports," and thus appears to be duplicative of the second category of claims preempted by § 1681h(e) – those based on disclosures made by "users of a consumer report." An examination of the text of § 1681 confirms that impression. Section 1681m states that users of "information contained in a consumer report" who "take[] any adverse action against a consumer" based on that information must "provide to the consumer orally, in writing, or electronically the name, address, and telephone number of the consumer reporting agency … that furnished the report." 15 U.S.C. § 1681m(a)(2). In other words, disclosures made under § 1681m are nothing more than disclosures "by a user of a consumer report to or for a consumer against whom the user has taken adverse action." 15 U.S.C. § 1681h(e).

In the context of this case, the Defendants are not "users of consumer reports." The FCRA defines a "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency." 15 U.S.C. § 1681a(d)(1). That definition explicitly excludes any "report containing information solely as to the transactions or experiences between the consumer and the person making the report." 15 U.S.C. § 1681a(d)(2)(A)(i). The information provided by Discover and Helio on which Mr. Burrell bases his claims falls under that exclusion. Mr. Burrell's state claims allege that Defendants committed defamation, intentional infliction of emotional distress, and the tort of negligence by reporting to third parties – the credit rating agencies – false information regarding transactions between themselves and Mr. Burrell. Therefore, those claims are not based on Defendants' use of a "consumer report," and the preemption provision contained in 15 U.S.C. § 1681h(e) does

not apply.  See, e.g., Ross, --- F.3d ----, 2010 WL 4261819 at *5 (bank which allegedly provided false information regarding the transactions of one of its customers was "not a 'user of consumer reports' vis-à-vis" that customer); Lema v. Citibank (South Dakota), N.A., 935 F. Supp. 695, 698 (D. Md. 1996) (defendants that "reported information obtained through their transactions with plaintiff to a consumer reporting agency" were "not users of information for the purposes of the FCRA."); Alvarez Melendez v. Citibank, 705 F. Supp. 67, 69 (D.P.R. 1988) (same).

In contrast to § 1681h(e), the preemption provision contained in § 1681t(b)(1)(F) clearly applies to Mr. Burrell's state law claims.  That provision explicitly states that it is applicable to "subject matter regulated under Section 1681s-2" – the portion of the FCRA that contains the obligations of entities, such as Defendants, that furnish information about consumer behavior to credit reporting agencies.  15 U.S.C. § 1681(b)(1)(F).  It makes that point doubly clear by providing that its preemptive effect covers claims "relating to the responsibilities of any persons who furnish information to consumer reporting agencies."  15 U.S.C. § 1681(b)(1)(F).  Most importantly, its text makes the scope of that preemptive effect clear:  "[n]o requirement or prohibition" relating to the duties of furnishers of information "may be imposed under the laws of any State."  15 U.S.C. § 1681t(b)(1)(F).  That admonishment leaves no room for state law claims against furnishers of information such as the ones Mr. Burrell asserts against Defendants, regardless of whether those claims are couched in terms of common law or state statutory obligations.  Therefore, the Court finds that Mr. Burrell's state law claims are barred by the FCRA and must be dismissed with prejudice.

**D.  The FCBA**

The Court's inquiry regarding Mr. Burrell's FCBA claim is significantly simpler, as Discover's sole argument in support of its request for dismissal of those claims is contradicted by

Mr. Burrell's Complaint.[8]  The FCBA requires creditors to investigate and correct any charges erroneously billed to a consumer's account if, within 60 days of the issuance of the statement containing those charges, the creditor receives written notice from the consumer of the alleged errors.  15 U.S.C. § 1666(a).  The written notice must be sent to the address specified by the creditor for the submission of billing disputes at the time the consumer opened the account.  15 U.S.C. § 1666(a) (cross-referencing 15 U.S.C. § 1637(b)(10), which requires creditors to specify such an address).  Unless the creditor stipulated otherwise at the time the consumer opened the account, written notice on the consumer's payment stub is sufficient.  15 U.S.C. § 1666(a).  The substance of the notice provided by the consumer must contain three elements:  (1) information that allows the creditor to ascertain the consumer's name and account number, (2) an indication that the consumer believes the statement contains a billing error and the amount of that error, and (3) the reasons for the consumer's belief.  15 U.S.C. § 1666(a)(1)-(3).

Discover argues that Mr. Burrell's FCBA claim must be dismissed because he "does not plead that he provided the required written notice," (Defs.' Br. Supp. Mot. Dismiss 11), but Mr. Burrell stated in his Complaint that he completed a written "Affidavit of Fraud" provided by Discover and submitted it to the company on or about May 18, 2009.  (Compl. ¶¶ 27-28.)  Since Discover provided that document, it is reasonable to infer that the address to which the company instructed Mr. Burrell to submit the Affidavit was the one it used to receive billing disputes.  See 15 U.S.C. § 1666(a) (stating that notice of a dispute must be sent to that address in order to trigger the creditor's obligations under the FCBA).  Moreover, it is reasonable to infer that Mr. Burrell included his name and account number on the Affidavit of Fraud.  See 15 U.S.C. § 1666(a)(1) (requiring consumers to include identifying information in a notice of dispute).

_____

[8] As discussed supra at n.4, the pending Motion does not seek dismissal of Mr. Burrell's FCBA claims against Helio.

Finally, it is reasonable to infer that Mr. Burrell used the Affidavit of Fraud to state that his identity had been stolen and the charges made to his account since April 2008 were the result of that theft.  <u>See</u> 15 U.S.C. § 1666(a)(2)-(3) (requiring consumers to include a statement that their account includes a billing error, the amount of that error, and the reasons for their belief in a notice of dispute).  Therefore, the Court finds that, under the standard of review applicable to this ruling, the written Affidavit of Fraud Mr. Burrell submitted to Discover on or about May 18, 2009 was sufficient to trigger that company's obligation to investigate and correct any billing errors under the FCBA.  <u>See</u> <u>Morse</u>, 132 F.3d at 906 (When ruling on a Rule 12(b)(6) motion, the Court must draw all reasonable inferences in favor of the plaintiff.).  However, in light of the FCBA's requirement that such a notice be submitted within 60 days of the issuance of a statement including erroneous charges, Mr. Burrell may only recover charges – along with any late fees, finance charges, and penalties – included on the billing statements issued by Discover during the period starting 60 days prior to the time Discover received the Affidavit of Fraud.  <u>See</u> 15 U.S.C. § 1666(a).

### III.  CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is granted in part and denied in part.  Mr. Burrell's FCRA claims are dismissed with prejudice, while his state law claims are dismissed without prejudice.  Mr. Burrell may submit an Amended Complaint curing, if he is able to do so, the defects in his state law claims within 30 days of this ruling.

The Court will enter an Order implementing this Opinion.


  __s/ Dickinson R. Debevoise_____
DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated:  December 6, 2010

24