<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROBERT BURRELL,<br><br>                      Plaintiff,<br><br>v.<br><br>DFS SERVICES, LLC, d/b/a DISCOVER, ET. AL.,<br><br>                      Defendants. | Civ. No. 10-2706 (DRD)<br><br>**O P I N I O N** |

*Appearances by:*

LAW OFFICE OF SCHMUEL KLEIN, PC
by: Schmuel Klein, Esq.
113 Cedarhill Avenue
Mahwah, NJ 07430

    *Attorneys for Plaintiff*

BALLARD SPAHR, LLP
by: Martin C. Bryce, Esq. and Mariah Murphy, Esq.
Main Street Plaza 1000, Suite 500
Voorhees, NJ 08043

    *Attorneys for Defendant DFS Services, LLC*

**<u>DEBEVOISE, Senior District Judge</u>**

       This matter arises out of a case of identity theft. On May 27, 2010 Plaintiff Robert

Burrell filed a Complaint against Defendant DFS Services, LLC ("Discover"), among others,

alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, Fair

Credit Billing Act ("FCBA"), 15 U.S.C. § 1666 *et seq.*, and asserting claims for intentional infliction of emotional distress, defamation, and negligence.

On July 29, 2010, Discover moved to dismiss Mr. Burrell's claims pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that (1) he cannot assert a cause of action under the FCRA or FCBA and; (2) his state law claims are preempted by the FCRA. In an Opinion, dated December 6, 2010, the Court found that Mr. Burrell (1) failed to assert a private cause of action under the FCRA; (2) properly asserted a cause of action under the FCBA; and (3) cannot assert claims for intentional infliction of emotional distress, defamation, and negligence in this case because they are preempted by the FCRA.

On December 28, 2010, Mr. Burrell filed an Amended Complaint setting forth the same causes of action as those in the original Complaint, but rescinded his FCRA claim against Discover. On January 11, 2011, Discover again moved to dismiss Mr. Burrell's state law claims, arguing that they were properly dismissed with prejudice in the Court's December 6, 2010 opinion. For the reasons set forth below, Discover's motion is granted.

## I. BACKGROUND

Mr. Burrell was a victim of identity theft. In April 2008, Mr. Burrell did not receive a billing statement for his Discover card. He contacted the company and was told by a customer service representative that his statements were being sent to his new address. Upon informing the customer service representative that he had not moved, Mr. Burrell was told that Discover would rectify the error and forward the April 2008 statement to his correct address.

Mr. Burrell never received his April 2008 statement. In fact, Discover did not communicate with him at all until September 1, 2008, when the company sent him a statement showing several charges that Mr. Burrell did not make, along with accumulated late fees and

penalties for non-payment.  Mr. Burrell contacted Discover again, only to be told by a customer service representative that the person to whom the company had been sending his bills had stopped making payments.  The representative identified that person as "Sarah Foster" – presumably an alias used by the identity thief.  Mr. Burrell responded that his identity had been stolen and that he was not affiliated with anyone named Sarah Foster.   The representative said that the Discover would "look into" the disputed charges.

Approximately one month later, in October 2008, Mr. Burrell again informed representatives of Discover that his identity had been stolen and received similar assurances that the company would investigate.  Finally, on or about May 18, 2009, he submitted a written Affidavit of Fraud provided by Discover in which he detailed the various fraudulent charges on his September 1, 2008 statement.

It appears that Discover's assurances were empty, as there is no indication that Discover investigated any of the fraudulent charges made to Mr. Burrell's credit card.  Even worse, the company allowed the identity thief to continue making such charges, all while assessing late fees and penalties for non-payment.  Indeed, On June 16, 2009, nearly a month after submitting the Affidavit of Fraud, Mr. Burrell received a bill from Discover for $9,706.68.  The following month, he received a letter stating that his card would soon exceed its credit limit of $10,300.

Apparently at a loss for how to proceed, Mr. Burrell yet again contacted a Discover customer service representative, who told him to file a police report.  When he went to his local police station, however, he was referred to the post office, which advised him that it was unable to help him.

On March 17, 2010, having attempting to combat the theft of his identity for roughly two years, Mr. Burrell stumbled upon the entities that Discover contends he should have notified in

the first place. On that date, he filed a complaint with the three main companies that track consumer credit ratings in the United States – Experian Information Solutions, Inc. ("Experian"), Equifax, Inc. ("Equifax"), and TransUnion, LLC ("TransUnion") – disputing the debts incurred by the identity thief.

However, at that point, Discover had submitted information to the credit rating agencies stating that he had not paid his debts for almost two years. As a result, his consumer credit rating was ruined, and he was beset by debt collectors, some of whom allegedly continue to harass Mr. Burrell and his family by repeatedly calling his house at inconvenient hours. Furthermore, the theft of Mr. Burrell's identity has rendered him irritable and unable to sleep.

On, May 27, 2010 Plaintiff Robert Burrell filed a Complaint against Defendant DFS Services, LLC ("Discover") and a number of other parties,[1] alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666 *et seq.*, and claims for intentional infliction of emotional distress, defamation, and negligence.

On July 29, 2010, Discover moved to dismiss Mr. Burrell's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). With respect to Mr. Burrell's claims under the FCRA, Discover argued that he could not assert a cause of action under 15 U.S.C. § 1681s-2(a) for the alleged failure to furnish accurate information to the credit rating agencies because 15 U.S.C. § 1681s-2(a) does not provide for a private right of action. Discover also argued that Mr. Burrell could not maintain a cause of action under 15 U.S.C. § 1681s-2(b), because that provision triggers a private right of action only when a credit reporting agency disputes the charges made to Mr. Burrell's accounts.

---

[1] Discover is the only Defendant that is relevant to the current ruling.

4

With respect to Mr. Burrell's state law claims, Discover argued that such claims are preempted by the FCRA. Finally, Discover maintained that Mr. Burrell could not assert claims under the FCBA because he failed to provide sufficient written notice to the company of the fraudulent charges made to his credit card.[2]

In an Opinion, dated December 6, 2010, the Court dismissed Mr. Burrell's FCRA claims without prejudice and his state law claims with prejudice, and allowed him to file an Amended Complaint to cure the defects in his FCRA claims. With respect to the FCRA claims, the Court found that 15 U.S.C. § 1681s-2(a) did not confer a private right of action. The Court also found that 15 U.S.C. § 1681s-2(b) did not trigger a private right of action in this case because "a consumer cannot maintain a claim under subsection (b) of 15 U.S.C. § 1681s-2 based on disputes filed directly with his or her credit card company. Rather, the consumer must communicate such disputes to a credit rating agency, which is then obligated to pass them on to the credit card company." (Opinion, December 6, 2010, 16, ECF No. 44) As a result, the Court held that a private right of action under § 1618s-2(b) requires proof that a consumer reporting agency had notified the credit card company of any charges the consumer wished to dispute.

Because Mr. Burrell admitted that he did not dispute the fraudulent charges to his credit card to a credit reporting agency until March 17, 2010—nearly a year after the final charges were made to his credit card—the Court dismissed his claims under 15 U.S.C. § 1618s-2(b).[3]

---

[2] The FCBA requires credit card users to provide written notice to their credit card provider of any charges they believe to be erroneous within sixty days after issuance of the statement reflecting such charges, in order to trigger the requirement that the credit card provider investigate such charges and correct any errors. 15 U.S.C. § 1666(a)(1)-(3).

[3] The Court did, however, grant Mr. Burrell leave to amend to assert a cause of action under 15 U.S.C. § 1618s-2(b) against Discover for the failure to investigate those disputed charges that were communicated to it by the credit reporting agencies after March 17, 2010.

The Court also dismissed Mr. Burrell's state law claims with prejudice because they were preempted by the FCRA. In doing so, the Court analyzed the FCRA's dual preemption provisions: 15 U.S.C. §§ 1681h(e) and 1681t(b)(1)(F). The Court found that § 1681h(e) only applied to actions against "consumer reporting agencies" or based on disclosures by "users of consumer reports." (Opinion, December 6, 2010, 18-20, ECF No. 44) Because Mr. Burrell's state law claims were neither against consumer reporting agencies, nor arose out of the use of a consumer report,[4] the Court held that they were not preempted under § 1681h(e).

In contrast, the Court found that such claims were preempted under 15 U.S.C. § 1681t(b)(1)(F). That provision preempts all state law claims (1) regarding "subject matter regulated under Section 1681s-2," or (2) "relating to the responsibilities of any persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F). Because Mr. Burrell's claims for intentional infliction of emotional distress, defamation, and negligence relate to Discover's responsibilities as an entity that furnishes information to credit reporting agencies, the Court held that those claims were preempted by the FCRA.

Finally, the Court found that the written Affidavit of Fraud submitted by Mr. Burrell to Discover on or about May 18, 2009 "was sufficient [notice] to trigger that company's obligation to investigate and correct any billing errors under the FCBA." (Opinion, December 6, 2010, 23, ECF No. 44) However, since the FCBA requires "that such notice be submitted within 60 days of the issuance of a statement including erroneous charges," the Court held that "Mr. Burrell may

---

[4] Under the FCRA, a "consumer report" is "any written, oral, or other communication of any information by a consumer reporting agency." 15 U.S.C. § 1681a(d)(1). However, the statute exempts from this definition "any report containing information solely as to the transactions or experiences between the consumer and the person making the report." 15 U.S.C. § 1681a(d)(2)(A)(i). Mr. Burrell's claims for defamation, intentional infliction of emotional distress, and negligence arise out of Discover's reporting false information regarding transactions between themselves and Mr. Burrell. Therefore, those claims are not based on Discover's use of a "consumer report."

only recover charges—along with any late fees, finance charges, and penalties—including on the billing statements issued by Discover" for the period beginning 60 days prior to when Discover received the Affidavit of Fraud.  (Opinion, December 6, 2010, 25, ECF No. 44).

On, December 28, 2010, Mr. Burrell filed an Amended Complaint against Defendants setting forth the same causes of action as those in the original Complaint, but with one critical difference: he rescinded his FCRA claims against Discover.  On that basis, Mr. Burrell maintains that his state law claims against Discover are no longer preempted by the FCRA.

On January 11, 2011, Discover again moved to dismiss Mr. Burrell's state law claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  In doing so, Discover argues that Mr. Burrell's state law claims were correctly dismissed with prejudice in this Court's December 6, 2010 ruling, and that his state law claims are still preempted by the FCRA, even though he rescinded his FCRA claim.[5]

## II.  DISCUSSION

Discover's Motion to Dismiss raises just one issue: whether a federal law that preempts state law does so only if a plaintiff seeks to invoke the protections of the federal law.

**A.  Standard of Review**

In assessing Defendants' arguments, the Court must apply the standard of review applicable to requests for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  That Rule permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted.  When considering a Rule 12(b)(6) motion, the court must accept the factual allegations

---

[5] Discover also argues that even if the Court were to consider Mr. Burrell's state law claims, they would fail because (1) they are barred by the economic loss doctrine; (2) Mr. Burrell failed to sufficiently plead defamation and intentional infliction of emotional distress; and (3) Mr. Burrell cannot plead a negligence claim because Discover owed no independent duty of care to him.  The Court need not reach these arguments because as set forth below, Mr. Burrell's state law claims are dismissed on the basis of being preempted by the FCRA.

in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court's inquiry, however, "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

      The Supreme Court recently clarified the Rule 12(b)(6) standard in two cases: Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The decisions in those cases abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." In contrast, Bell Atlantic, 550 U.S. at 545, held that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Thus, the assertions in the complaint must be enough to "state a claim to relief that is plausible on its face," id. at 570, meaning that the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Iqbal, 129 S. Ct. at 1949; see also, Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (In order to survive a motion to dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

      When assessing the sufficiency of a complaint, the Court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949. Although for the

8

purposes of a motion to dismiss the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

When a claim is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), leave to amend and reassert that claim is ordinarily granted. In re Burlington Coat Factory Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). A claim may be dismissed with prejudice, however, if amending the complaint would be futile. Id. "Futile," as used in this context, means that the complaint could not be amended to state a legally-cognizable claim. Id. (citing Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996)).

**B. Preemption of State Law Claims**

Discover argues that Mr. Burrell cannot restate claims in his Amended Complaint for intentional infliction of emotional distress, defamation, and negligence that were dismissed with prejudice in the Court's December 6, 2010 ruling as being preempted by the FCRA. Mr. Burrell does not dispute this ruling. Instead he maintains that, because he rescinded his FCRA claims against Discover in his Amended Complaint, his state law claims are no longer preempted.

Preemption doctrine derives from the Supremacy Clause of the United States Constitution. Article VI declares that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Thus, since the Supreme Court's decision in M'Culloch v. Maryland, it has been settled that state law that conflicts with federal law is "without effect." Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992) (internal quotations

9

and citations omitted).

"Under the Supremacy Clause, federal law may supersede state law in several different ways." Hillsborough County, Fla., v. Automated Med. Labs., Inc., 471 U.S. 707, 713 (1985). Over the years, the Supreme Court has recognized three types of preemption: express preemption, implied conflict preemption, and field preemption. Id.

A federal enactment expressly preempts state law if it contains language so requiring. Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 541 (2001). Thus, when construing an express preemption clause, a reviewing court must necessarily begin by examining the "plain wording of the clause," as this "necessarily contains the best evidence of Congress' pre-emptive intent." Sprietsma v. Mercury Marine, 537 U.S. 51, 62-63 (2002) (quoting CSX Transp. v. Easterwood, 507 U.S. 658, 664 (1993)). Though the language of the provision offers a starting point, courts are often called upon to "identify the domain expressly pre-empted by that language." Medtronic, Inc. v. Lohr, 518 U.S. 470, 484 (1996) (internal quotation marks and citations omitted). This, in turn, is guided by two principles. Id. at 485. First, "Congressional purpose is the 'ultimate touchstone' of our inquiry." Lorillard Tobacco Co., 533 U.S. at 541 (quoting Cipollone, 505 U.S. at 516). Second, courts must operate under the "assumption that the historic police powers of the States [a]re not to be superseded by the Federal Act unless that [is] the clear and manifest purpose of Congress." Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 325 (1997).

As discussed in the Court's December 6, 2010 Opinion, the FCRA contains two broad preemption provisions, the second of which expressly preempts Mr. Burrell's claims for intentional infliction of emotional distress, defamation, and negligence. (Opinion, December 6, 2010, 18-21, ECF No. 44). That provision states that "[n]o requirement or prohibition" relating

to the duties of furnishers of information "may be imposed under the laws of any State." 15 U.S.C. § 1681t(b)(1)(F).  Thus, through the FCRA, Congress has made clear that no state statutory or common law may govern the obligations of furnishers of information to credit reporting agencies, such as Discover.  See Cipollone, 505 U.S. at 521 ("The phrase '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common law rules"); see also Premium Mortg. Corp. v. Equifax, Inc., 583 F.3d 103, 106-07 (2d Cir. 2009) (dismissing common law claims for misappropriation of trade secrets, unfair competition, and unjust enrichment as preempted by the FCRA).  As a result, the Court found that Mr. Burrell's claims for intentional infliction of emotional distress, defamation, and negligence were preempted by the FCRA because they related to Discover's obligations as a furnisher of information to credit reporting agencies.

That Mr. Burrell chose not to invoke the FCRA against Discover in his Amended Complaint is of no moment.  Preemption is not limited to conflicts between federal and state law set forth in a pleading document; it is rooted in Congress's ability to limit state authority to regulate areas of conduct in the first place.  See generally Erwin Chemerinsky et. al., Constitutional Law, Principles and Policies 390-419 (3rd Ed. 2006).  Therefore, Mr. Burrell's claims for intentional infliction of emotional distress, defamation, and negligence are dismissed with prejudice.

### III.  CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss Mr. Burrell's claims for intentional infliction of emotional distress, defamation, and negligence is GRANTED.

The Court will enter an Order implementing this Opinion.

                                          **/s/ Dickinson R. Debevoise**
                                          DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: March 3, 2011